# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EVA PEPAJ, BROOKE JOHNSON a/k/a
BROOKE TAYLOR, JESSE GOLDEN a/k/a
JESSICA GOLDEN, PAOLA CANAS,
BRENDA GEIGER, JESSA HINTON a/k/a
JESSICA HINTON, LINA POSADA, TIFFANY
TOTH GRAY,

    *Plaintiffs*,

v.

BARCODE CORPORATION d/b/a BARCODE,
DMT GROUP, LLC d/b/a BARCODE

and

DOES 1 THROUGH 5,

    *Defendants.*

Case No.  1:22-cv-1397

## COMPLAINT

Plaintiffs EVA PEPAJ, BROOKE JOHNSON a/k/a BROOKE TAYLOR, JESSE
GOLDEN a/k/a JESSICA GOLDEN, PAOLA CANAS, BRENDA GEIGER, JESSA HINTON
a/k/a JESSICA HINTON, LINA POSADA, TIFFANY TOTH GRAY, (collectively, "Plaintiffs"),
by and through their undersigned counsel, as and for their Complaint ("Complaint") against
Defendants BARCODE CORPORATION d/b/a BARCODE, DMT GROUP, LLC d/b/a
BARCODE, and DOES 1 THROUGH 5 (collectively "Defendants") respectfully allege as
follows:

## BACKGROUND

1.    This is an action for damages and injunctive relief relating to Defendants'
misappropriation, alteration, and unauthorized publication and use in advertising of images of
Plaintiffs, each of whom are well-known professional models, to promote their night club,

Barcode, located in the District of Columbia ("Barcode" or the "Club").

2.      As detailed below, Defendants' misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) violation of section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1), which prohibits both false or misleading representations of fact in commercial advertising and the false or misleading use of a person's image for commercial purposes; b) violation of each Plaintiff's common law right of publicity; and, c) violation of various common law torts.

3.      In addition to the actual, punitive and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using their Images to promote any Club, via any medium.

## JURISDICTION & VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs' have stated claims under, *inter alia*, the Lanham Act, 15 U.S.C. § 1125(a)(1). This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) insofar as there is complete diversity of the parties to this action, and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00).

5.      As set forth immediately below, Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

6.      According to publicly available records, defendant DMT Group, LLC ("DMT") is a corporation formed under the laws of the District of Columbia, with its principal place of business located at 1101 17th St NW Washington, DC 20036. DMT operates Barcode, which is located at 1101 17th St NW Washington, DC 20036.

7.      According to publicly available records, defendant Barcode Corporation

("Barcode") is a corporation formed under the laws of the District of Columbia, with its principal place of business located at 1101 17th St NW Washington, DC 20036.  Barcode operates Barcode, which is located at 1101 17th St NW Washington, DC 20036.

8.    Venue is proper in the District of Columbia because it is Defendants' place of business.

**PARTIES**

*Plaintiffs*

9.    Plaintiff Eva Pepaj ("Pepaj") is a well-known professional model, and a resident of Los Angeles County, California.

10.    Plaintiff Brooke Johnson a/k/a Brooke Taylor ("Johnson") is a well-known professional model, and a resident of Santa Barbara County, California.

11.    Plaintiff Jesse Golden a/k/a Jessica Golden ("Golden") is a well-known professional model, and a resident of Los Angeles County, California.

12.    Plaintiff Paola Canas ("Canas") is a well-known professional model, and a resident of Miami-Dade County, Florida.

13.    Plaintiff Jessa Hinton a/k/a Jessica Hinton ("Hinton") is a well-known professional model, and a resident of Los Angeles County, California.

14.    Plaintiff Lina Posada ("Posada") is a well-known professional model, and a resident of San Bernardino County, California.

15.    Plaintiff Tiffany Toth Gray ("Toth") is a well-known professional model, and a resident of Orange County, California.

*Defendants*

16.    According to publicly available records, defendants DMT and Barcode were

formed under the laws of the state of District of Columbia.  During times relevant to this action, DMT and Barcode operated Barcode in the District of Columbia.

17.    DOES 1 THROUGH 5 are certain yet to be named individuals and/or entities that DMT and Barcode worked in conjunction with, at the direction of, or in concert with as pertains to the subject advertisements which contain images of Plaintiffs.  On information and belief, and without limitation, such individuals and/or entities include graphic designers, independent contractors, DJ, social media consultants and/or others.

## FACTUAL ALLEGATIONS

18.    As set forth immediately below, each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

19.    Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize their earning potential, book modeling contracts, and establish each of their individual brands.  In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

20.    Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by one or more of the Defendants in order to make it appear that they worked at, endorsed or were otherwise associated or affiliated with the Club.

21.    In the case of every Plaintiff, such appearance was false.

22.    Moreover, in every case this misappropriation occurred without any Plaintiff's knowledge, consent or authorization, at no point did any Plaintiff ever receive any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal

use of Plaintiffs' Images have caused each Plaintiff to suffer substantial damages.

23.     Defendants' obvious intention in using Plaintiffs' images without consent or remuneration was to harm Plaintiffs by effectively forcing them to appear in Defendants' advertising for no compensation.

24.     Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market herself to potential clients, grow her fan base, and build and maintain her brand.

***Plaintiffs' Backgrounds and Careers***

25.     Pepaj is a professional model and actress who moved to Hollywood to pursue her career in 2004.  Her work includes high fashion runway modeling, print features, and film roles. Pepaj has appeared in films such as The Hand Off, Interior, Leather Bar and The Romp, and was a feature model in a national Diet Coke TV commercial campaign.

26.     That we know of, Pepaj is depicted in the photos in Exhibit "A" to promote Barcode on its Facebook page. These Images were intentionally altered to make it appear that Pepaj was either a stripper working at Barcode, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

27.     Pepaj has never been employed at Barcode, has never been hired to endorse Barcode, has never been otherwise associated or affiliated with Barcode, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

28.     Johnson is a world-renowned model who has appeared in magazines such as *FHM*, *Maxim*, *Viva Glam*, and *Stuff*. She has also appeared in commercials and billboards such as

Fredrick's of Hollywood, Coors Light, and Budweiser. In addition, Taylor has also been featured in countless other catalogs, billboards, television commercials and shows.

29.    That we know of, Johnson is depicted in the photo in Exhibit "A" to promote Barcode on its Facebook page. This Image was intentionally altered to make it appear that Johnson was either a stripper working at Barcode, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

30.    Johnson has never been employed at Barcode, has never been hired to endorse Barcode, has never been otherwise associated or affiliated with Barcode, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

31.    Golden is a successful model and businesswoman. She became a supermodel with high profile clients that included Abercrombie & Fitch, Victoria Secret, Lucy Sport, Coca-Cola, GAP, and Nike. She has graced the covers of magazines like New York Times, Fitness, New Port Beach, Yoga International, and many others. Jesse shares her secrets on her own blog and also writes for many other magazines and sites. She's currently a Holistic Health Practitioner and is a certified Hatha yoga teacher. She has her own fitness and yoga brand and products. Working for many notable fashion brands, dozens of commercials, television and film; Jesse continues to expand her career through life experiences.

32.    That we know of, Golden is depicted in the photos in Exhibit "A" to promote Barcode on its Facebook page. These Images were intentionally altered to make it appear that Golden was either a stripper working at Barcode, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

33.    Golden has never been employed at Barcode, has never been hired to endorse

Barcode, has never been otherwise associated or affiliated with Barcode, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

34. Canas is a Colombian born model now residing and working in the United States. Canas has been in the industry for over twelve years and has found great success as a model, host, runway model, and actor. Canas has worked runway shows in her native Colombia, as well as Mexico, Ecuador, United States, and most recently in Paris, France. She heads up the international campaign and was a contracted model for Curve and their worldwide lingerie line. In Dubai, United Arab Emirates, Canas was chosen as the face of the Masters Golf Tournament, and was the image for the "International Surf and Sport Expo" in Orlando, FL. She has worked for international brands and labels such as SOHO, KISS underwear, Salon International, Zona Rosa, and Esteban Escobar. She has appeared in numerous TV shows like "FOX Sports" and on TV networks such as Telemundo and TV Azteca. Canas continues to build an impressive profile and is constantly in demand between Miami, FL, New York, NY, and Los Angeles, CA. Canas has over 545 thousand Instagram followers, over 10.5 thousand followers on Twitter, and over nine thousand Facebook likes.

35. That we know of, Canas is depicted in the photo in Exhibit "B" to promote Barcode on its Facebook page. This Image was intentionally altered to make it appear that Canas was either a stripper working at Barcode, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

36. Canas has never been employed at Barcode's, has never been hired to endorse Barcode, has never been otherwise associated or affiliated with Barcode, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue

to suffer, damages as a result of same.

37.    Geiger is a professional model and actress who performed with eight-time Grammy nominee rapper Lil Wayne in a music video for two-time Grammy nominee singer Keri Hilson. She is most known for her work in Glamour Magazine and her appearance on "The Howard Stern Show" in a "Miss HTV March" contest. Geiger has appeared in numerous magazines such as *Show, Maxim* and *Raw*, and has modeled for several product campaigns such as Primitive Clothing, where she currently has her own line of custom skateboard decks.

38.    That we know of, Geiger is depicted in the photos in Exhibit "C" to promote Barcode on its Facebook page. These Images were intentionally altered to make it appear that Geiger was either a stripper working at Barcode, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

39.    Geiger has never been employed at Barcode, has never been hired to endorse Barcode, has never been otherwise associated or affiliated with Barcode's, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

40.    Hinton was discovered by a talent manager at a wedding at 14. By 16 she locked in three national TV commercials and made guest appearances on *Baywatch* and *7th Heaven*. Hinton expanded her portfolio to include runway modeling and print campaigns at 18. In 2010, Hinton was the face of the *Palms Hotel & Casino's* ad campaign. She then pursued TV personality roles hosting for *Victory Poker*, and *Top Rank Boxing* interviewing the likes of Manny Pacquiao and Shane Mosley. In 2011, she was selected as *July's Playmate of the Month* becoming one of the most popular Playmates of that year. She was the center piece of an ad campaign for *Milwaukee's Best Beer* in conjunction with *Playboy Enterprises*. Hinton also attained spokesmodel roles for

*Affliction Clothing*, *Enzo*, *Milano Hair Products*, *REVIV Wellness Spa*, and *Protein World*. She has ongoing modeling contracts with *Rhonda Shear Shapewear*, *Leg Avenue,* and *Roma Costume*, in addition to hosting a Los Angeles, CA television station *KTLA*. Her images have appeared on billboards, magazines, posters, and multiple forms of electronic media. Hinton has been a featured front cover model gaining attraction for magazines such as *FHM*, *Kandy*, *MMA Sports*, *Guitar World*, and *Muscle & Fitness*. She was named Creative Director for *MAJR Media* and was given part ownership for her role with the company. Hinton has successfully accomplished elite status as a social media celebrity with a combined total of over 4.2 million followers on Facebook, Instagram and Twitter.

41.    That we know of, Hinton is depicted in the photo in Exhibit "D" to promote Barcode on its Facebook page. This Image was intentionally altered to make it appear that Hinton was either a stripper working at Barcode, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

42.    Hinton has never been employed at Barcode, has never been hired to endorse Barcode, has never been otherwise associated or affiliated with Barcode, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

43.    Posada is a fashion model and designer. A native of Colombia, Posada is best known as a model for the Besame and Espiral lingerie collections. Posada has also modeled for Paradizia Swimwear, Babalu Swimwear, Irgus Swinwear, Ujeans, as well as many others. She currently has 95.1 thousand Instagram followers, 2.99 thousand YouTube subscribers, 8,931 Facebook followers, and over 5.6 thousand Twitter followers.

44.    That we know of, Posada is depicted in the photo in Exhibit "E" to promote Barcode

on its Facebook page. This Image was intentionally altered to make it appear that Posada was either a stripper working at Barcode, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

45.    Posada has never been employed at Barcode, has never been hired to endorse Barcode, has never been otherwise associated or affiliated with Barcode, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

46.    Toth is an extremely successful model that takes great pride in holding the prestigious title of a *Playboy* Playmate. Toth was the *Playboy* "Cyber Girl of the Month" for May 2006. She then went on to pose for three pictorials under *Playboy's* Fresh Faces. Moreover, she has not only been featured in such magazines as *Super Street Bike*, *Import Tuner, Sport Truck, Iron Man, Seventeen*, and *Maxim*, but has also posed for various catalogs. Toth currently has over 3.7 million Facebook followers, 1.4 million Instagram followers, and over 305 thousand Twitter followers, and 1.08 thousand YouTube subscribers.

47.    That we know of, Toth is depicted in the photo in Exhibit "F" to promote Barcode on its Facebook page and website. This Image was intentionally altered to make it appear that Toth was either a stripper working at Barcode, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

48.    Toth has never been employed at Barcode, has never been hired to endorse Barcode, has never been otherwise associated or affiliated with Barcode, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendants' Business***

49.     Upon information and belief, Defendants operated, during the relevant time period, the Club, where they engaged in the business of selling alcohol and food.

50.     Upon information and belief, and in furtherance of its promotion their promotion of the Club, Defendants own, operate and control the Club's social media accounts, including its Facebook, Twitter, and Instagram accounts.

51.     Defendants used the Club's Facebook, Twitter, and Instagram accounts to promote the Club, and to attract patrons thereto.

52.     Defendants did this for their own commercial and financial benefit.

53.     Defendants have used, advertised, created, printed and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that each Plaintiff either worked at Club, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

54.     Defendants used Plaintiffs' Images and created the false impression that they worked at or endorsed the Club to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

55.     As Defendants were at all times aware, at no point has any Plaintiff ever been affiliated with or employed by the Club and at no point have any of the Plaintiffs ever endorsed the Club, or otherwise been affiliated or associated with the Club.

56.     All of Defendants' activities, including their misappropriation of Plaintiffs' Images, and publication of same, were done without the knowledge or consent of Plaintiffs, and Defendants did not compensate Plaintiffs for their use of their Images.

57.     As such, Plaintiffs have never received any benefit from Defendants' use of their Images.

**Standard Business Practices in the Modeling Industry**

58.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

59.     The fee that a professional model, such as each of the Plaintiffs, will receive is negotiated by her agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) the location where the photo shoot takes place, and the length thereof; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the "term") the rights to use the photos will be assigned.  Most licenses to use a model's image are for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

**Defendants' Misappropriation of Plaintiffs' Images**

60.     As detailed above, Defendants knowingly, and without the prior consent of any of the Plaintiffs, invaded Plaintiffs' privacy by using Plaintiffs' Images for commercial purposes in order to promote the Club by and through various marketing and promotional mediums including, without limitation, the Club's website, Facebook and Instagram.

61.     Defendants showcased Plaintiffs' Images on the Club's social media pages to create the false impression that Plaintiffs worked at the Club, endorsed, promoted or sponsored same, or were otherwise associated or affiliated with same.

62.     Defendants did so to attract clientele to the Club, promote the Club, and thereby generate revenue for Defendants.

63.     Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed the Club.

64.     Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

65.     In addition, Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their careers.

66.     This is especially so insofar as each of Plaintiffs' Images have been associated with a night club, and the implication of Defendants' use of Plaintiffs' Images is that they are strippers, endorse a night club, or are otherwise associated or affiliated with a night club.

67.     At no point were any of the Plaintiffs ever affiliated with the Club, or Defendants.

68.     Each of Plaintiffs' Images was used without her consent.

69.     At no point was any Plaintiff ever contacted by any Defendants, or any representative of any of the Defendants, to request the use of any of Plaintiffs' Images.

70.     No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

71.     No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including the Club's website, Twitter, Facebook, or Instagram accounts.

72.     Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

73.     Upon information and belief, Defendants have taken the foregoing actions with the intent of causing irreparable harm.

## FIRST CAUSE OF ACTION
### (Common Law Right of Publicity)

13

66.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

67.     As set forth hereon, each Plaintiff has and had at the time of Defendants' misappropriation a commercial interest in her image, photo, persona and likeness.

68.     As set forth hereon, Defendants have violated each Plaintiff's right to publicity under District of Columbia law.

69.     Defendants have done so by appropriating each Plaintiff's image and likeness for commercial purposes without authority or consent.

70.      Defendants invaded and violated Plaintiffs' privacy and misappropriated their likeness by publishing their Images on the Club's website or related social media accounts as part of Defendants' advertising campaign.

71.     At all relevant times, the Club's website and social media accounts were used and operated by Defendants for advertising and trade purposes.

72.     The Club's website and social media accounts were designed to attract business to the Club and generate revenue for Defendants.

73.     Plaintiffs are informed and believe and hereon allege that the manner in which Defendants posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

74.     Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the

filing of this complaint.

75.     Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

76.     Upon information and belief, Defendants' use of Plaintiffs' Images did in fact attract clientele and generate business for the Club.

77.     At no point did any Defendants ever receive permission or consent to use any Plaintiff's Image on their website or social media account.

78.     Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

79.     At no point did Defendants compensate Plaintiffs for its use of their Images.

80.     No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

**SECOND CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(B): False Advertising)**

81.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

82.     The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq*. apply to Defendants, and protect Plaintiffs from the conduct described hereon.

83.     As set forth hereon, each advertisement at issue in this action were false and misleading because no Plaintiff ever worked at the Club or agreed to appear in the Club's advertisements.

84.     Given the false and misleading nature of the advertisements, they had the capacity

to deceive consumers and, upon information and belief, did so deceive consumers.

85.    Upon information and belief, said deceptive advertisements had a material effect on the purchasing decisions of consumers who attended the Club.

86.    Insofar as Defendants published these false and misleading advertisements on the internet, they had the capacity to affect interstate commerce, and, upon information and belief, did so affect interstate commerce.

87.    Despite the fact that Defendants were at all times aware that the Plaintiffs neither worked at, nor endorsed the Club, Defendants nevertheless used Plaintiffs' Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with the Club.

88.    Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at the Club.

89.    Upon information and belief, Defendants' use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of the Club, and the goods and services provided by the Club.

90.    Due to Defendants' unauthorized use of Plaintiffs' Images in order to create a false advertisement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

**THIRD CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A): False Association)**

91.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

92.    The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq*. apply to Defendants, and protect Plaintiffs from the conduct described hereon.

93.    Defendants used Plaintiffs' Images in order, *inter alia*, to create the false

16

impression with the public that Plaintiffs were affiliated, connected, or associated with the Club, or worked at, sponsored, or approved of the Club's goods, services or commercial activities.

94.    This was done to promote and attract clientele to the Club, and thereby generate revenue for the Defendants.

95.    Thus, this was done in furtherance of Defendants' commercial benefit.

96.    Despite the fact that Defendants were at all times aware that the Plaintiffs were neither affiliated, connected or associated with the Club nor worked at, sponsored, or approved of the Club's goods, services or commercial activities, Defendants nevertheless used Plaintiffs' Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with the Club.

97.    Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship, affiliation, connection, association and/or employment at the Club.

98.    Upon information and belief, Defendants' use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of the Club, and the goods and services provided by the Club.

99.    Due to Defendants' unauthorized use of Plaintiffs' Images in order to create a false endorsement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## FOURTH CAUSE OF ACTION
### (Negligence and *Respondeat Superior*)

100.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

101.    Plaintiffs are further informed and believe and hereon allege that Defendants

maintain or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the *unauthorized and non-consensual* use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

102.    Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

103.    Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

104.    Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

105.    Defendants breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

106.    Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and District of Columbia law, were not violated.  Defendants breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

107.    Defendants' breach was the proximate cause of the harm Plaintiffs suffered when

their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

108.    As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION
**(Conversion)**

109.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

110.    Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests thereon.

111.    By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain Images for its own use and financial gain.

112.    As a result of Defendants' unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION
**(Unjust Enrichment)**

113.    Plaintiffs hereby repeat and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

114.    As set forth in detail above, Defendants published Plaintiffs' Images in order to promote the Club to the general public and potential clientele.

115.    Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either working at the Club or endorsed the Club.

116.    Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

117.    Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

118.    Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to the Club.

119.    Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

120.    As such, Plaintiffs have been damaged in an amount to be determined at trial.

<u>SEVENTH CAUSE OF ACTION</u>
**(Quantum Meruit)**

121.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

122.    Plaintiffs are each internationally known models who earn their livings appearing in, *inter alia*, commercials, advertisements, and publications on behalf of companies and brands.

123.    Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

124.    Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at their the Club, endorse the Club, or are otherwise affiliated with the Club, Defendants have not compensated Plaintiffs.

125.    Plaintiff is therefore entitled to reasonable compensation for the Club's unauthorized use of their Images.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a) For actual damages in an amount to be determined at trial relating to Plaintiffs' first through eighth causes of action, plus pre-judgment and post-judgment interest;

(b) For an order permanently enjoining Defendants from using Plaintiffs' Images to promote the Club;

(c) For punitive damages in an amount to be determined at trial;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action;

(e) For such other and further relief as the Court may deem just and proper.

Dated: May 19, 2022

Respectfully submitted,

EVA PEPAJ, BROOKE JOHNSON a/k/a BROOKE TAYLOR, JESSE GOLDEN a/k/a JESSICA GOLDEN, PAOLA CANAS, BRENDA GEIGER, JESSA HINTON a/k/a JESSICA HINTON, LINA POSADA, TIFFANY TOTH GRAY,

By Counsel

21

_____
Timothy D. Fisher          (DC Bar No. 501796)
Wharton, Levin, Ehrmantraut & Klein
10300 Eaton Place, Suite 301
Fairfax, Virginia 22030
Phone:     (703) 591-9700
Fax:        (703) 591-0023
Email:        tdf@wlekn.com

*Local Counsel for Plaintiff*

      and

John V. Golaszewski*
The Casas Law Firm, P.C.
1740 Broadway, 15th Floor
New York, New York
Phone:     (646) 872-3178
Fax:        (855) 220-9626
john@talentrights.law
*Pro Hac Vice Application Forthcoming*

22