**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| EVA PEPAJ, *et al.*, | |
| *Plaintiffs*, | |
| v. | Civil Action No. 22-1397 (RDM) |
| BARCODE CORPORATION, *et al.*, | |
| *Defendants*. | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs, eight professional models, have brought this suit against a D.C. nightclub operator, Barcode Corporation ("Barcode"), and Barcode's commercial landlord, CESC, alleging that Barcode unlawfully used images of Plaintiffs to promote nightclub events. *See generally* Dkt. 34 (Am. Compl.). Plaintiffs assert claims against Barcode under both the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)–(B), and D.C. law, and they further maintain that CESC is contributorily liable under the Lanham Act for Barcode's violations. The Court previously entered default judgment against Barcode (which failed to appear in the case) on some, but not all, counts of Plaintiffs' original complaint. *See* Dkt. 25. In contrast, CESC has appeared and has now moved to dismiss all claims against it. *See* Dkt. 36. For the reasons that follow, the Court will **GRANT** CESC's motion to dismiss.

## I. BACKGROUND

For the purpose of resolving the pending motion to dismiss, the Court will accept as true the non-conclusory factual allegations contained in Plaintiffs' amended complaint, *see* Dkt. 34 (Am. Compl.). *See Gordon v. U.S. Capitol Police*, 778 F.3d 158, 163–64 (D.C. Cir. 2015). Plaintiffs are professional models who license their images to be used to advertise products and

services for a variety of entities.  Dkt. 34 at 4 (Am. Compl. ¶ 20).  Defendant Barcode operated a

D.C. nightclub.  *Id.* at 1–2 (Am. Compl. ¶ 1).  To promote its business of selling food and

alcohol and to attract clientele, Barcode posted promotional images to its website and social

media accounts.  *Id.* at 9–10 (Am. Compl. ¶¶ 51–53); *see generally* Dkt. 34-1.  From at least

2014 to 2018, Barcode posted several advertisements that included "misappropriated[] and

intentionally altered" images of the Plaintiffs.  Dkt. 34 at 4 (Am. Compl. ¶ 22); *see, e.g.*, Dkt. 34-

1 at 14–17.  These images advertised Barcode's events and drink deals with Plaintiffs' images

superimposed to "make it appear that [Plaintiffs] worked at, endorsed or were otherwise

associated or affiliated with" Barcode.  Dkt. 34 at 4 (Am. Compl. ¶ 22).  Each use of Plaintiffs'

images occurred without Plaintiffs' knowledge, consent, or authorization; nor did Barcode ever

compensate Plaintiffs for the use of their likenesses.  *Id.* (Am. Compl. ¶¶ 23–24).  "[A]t all

relevant times," CESC owned the property where Barcode conducted business.  *Id.* at 16 (Am.

Compl. ¶ 102).

On May 19, 2022, Plaintiffs brought this suit against Barcode Corporation and DMT

Group, LLC, which Plaintiffs also alleged was involved in operating the Barcode nightclub.[1]  *See*

Dkt. 1 at 2 (Compl. ¶ 6).  Plaintiffs later voluntarily dismissed the claims against DMT Group,

LLC, *see* Dkt. 15, and, after Barcode failed to appear, Plaintiffs filed a motion for default

judgment against Barcode on December 18, 2023, *see* Dkt. 21, which the Court granted in part

and denied in part without prejudice on September 27, 2024, *see* Dkt. 25.  Specifically, the Court

dismissed without prejudice Plaintiffs' claims against Barcode under the Lanham Act, *id.* at 10–

13, Plaintiffs' common law negligence and conversion claims, *id.* at 13–18, and Plaintiffs'

---

[1] Plaintiffs also named "Does 1 through 5" as defendants in the case.  *See* Dkt. 1 at 4 (Compl.
¶ 17); Dkt. 34 at 3 (Am. Compl. ¶ 17).  Because Plaintiffs alleged no specific facts about "Does 1
through 5," their presence in the suit does not affect the pending motion to dismiss.

quantum meruit claim, *id.* at 19–20, for failure to state claims upon which relief could be granted. Regarding the Lanham Act, the Court held that Plaintiffs had failed to satisfy the two threshold requirements of alleging an injury to a commercial interest and alleging proximate causation between the violations and their injury. *Id.* at 11. Similarly, Plaintiffs' negligence and conversion claims failed to allege required elements, such as a duty of care and interference with property rights, *id.* at 13–18, and Plaintiffs' quantum meruit allegations did not sufficiently establish the existence of an implied contractual relationship, *id.* at 20.

The Court did grant default judgment to Plaintiffs for their claims regarding their common law right of publicity, *id.* at 8–10, and for unjust enrichment, *id.* at 18–19. The Court declined, however, to grant Plaintiffs' requested relief—over $600,000 in damages, *see* Dkt. 21 at 5—because Plaintiffs did not "sufficiently demonstrate[] that they [were] entitled to the remedies they seek," Dkt. 25 at 21, and instead required further briefing on the issue. While final resolution of their damages for the claims against Barcode was pending, Plaintiffs moved to file an amended complaint, *see* Dkt. 33, and the Court granted Plaintiffs' motion, Min. Order (Oct. 17, 2025). Plaintiffs filed their amended complaint on November 7, 2025, adding CESC as a Defendant.[2] *See* Dkt. 34 (Am. Compl.). CESC then filed a motion to dismiss on December 15,

---

[2] The parties have since acknowledged that Plaintiffs incorrectly named CESC 1101 17th Street Limited Partnership as Barcode's landlord and that the correct name of the relevant entity is CESC 1101 17th Street LLC. Dkt. 36-1 at 2; Dkt. 39 at 1 n.1. CESC has argued that this mistake alone warrants granting its motion to dismiss. Dkt. 36-1 at 2. Plaintiffs have signaled a willingness to correct their error with another amended complaint, Dkt. 39 at 1 n.1, however, and the Court would likely permit a technical amendment of that limited nature if the complaint were not otherwise deficient. In an effort to manage these matters efficiently, the Court's analysis will therefore proceed as if Plaintiffs had named the correct entity and adjudicate this motion on the merits.

In addition, when Plaintiffs amended their complaint to include claims against CESC, they did not include any request for relief, money damages or otherwise, against CESC as opposed to Barcode. Dkt. 34 at 19 (Am. Compl.). The Court will likewise adjudicate the motion to dismiss

2025, *see* Dkt. 36, and Plaintiffs opposed the motion, *see* Dkt. 39.  The Court now considers the legal sufficiency of Plaintiffs' claim against CESC.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint for "failure to state a claim under which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a 12(b)(6) motion, a plaintiff's complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified).

In evaluating a motion to dismiss, the Court must accept all factual allegations as true and construe all reasonable inferences in the plaintiff's favor.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Bare conclusory statements "couched as [] factual allegation[s]," however, will not suffice.  *Laughlin v. Holder*, 923 F. Supp. 2d 204, 209 (D.D.C. 2013) (quoting *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006)); *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *see also City of Harper Woods Emps.' Ret. Sys. v. Olver*, 589 F.3d 1292, 1298 (D.C. Cir. 2009) ("[T]he court . . . need not accept inferences unsupported by facts or legal conclusions cast in the form of factual allegations.").  Nor can a plaintiff "avoid a motion to dismiss for failure to state a claim simply by asserting discovery might reveal facts sufficient to state a claim."  *King v. Holder*, 941 F. Supp. 2d 83, 92 (D.D.C. 2013).  Rather, the complaint itself must contain factual allegations sufficient to state a plausible claim for relief.  *See Iqbal*, 556 U.S. at 678.

---

assuming that Plaintiffs do, in fact, seek relief from CESC based on their asserted claims against that entity, rather than further delaying the case by inviting another amended complaint to resolve that issue.

4

### III.  ANALYSIS

Plaintiffs assert only one claim against CESC—that CESC violated Section 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125(a), through contributory trademark infringement. Dkt. 34 at 15–16 (Am. Compl. ¶¶ 100–07).  To state a claim for contributory trademark infringement, Plaintiffs must clear two hurdles.  First, they must plausibly allege that the Lanham Act was directly violated by a third party.  Second, they must allege that CESC's conduct contributed to that third party's violation of the Lanham Act.  Because Plaintiffs' amended complaint fails both requirements, the Court will grant CESC's motion to dismiss.

### A.      Primary Liability

Any valid claim of contributory liability under the Lanham Act must be premised on a valid claim of primary liability under the statute.  *See Newborn v. Yahoo!, Inc.*, 391 F. Supp. 2d 181, 190–91 (D.D.C. 2005) (holding that liability for contributory trademark infringement requires a third party to have infringed upon a trademark); *Duty Free Ams., Inc. v. Estee Lauder Cos.*, 797 F.3d 1248, 1277 (11th Cir. 2015) (finding that, in order to properly state a contributory liability claim under Section 43(a), a plaintiff must first "show that a third party in fact directly engaged in false advertising that injured the plaintiff").  Thus, to succeed on the claim against CESC, Plaintiffs must first state a claim against Barcode under the Lanham Act.

Plaintiffs bring suit against Barcode, the alleged direct infringer, under Section 43(a)(1) of the Lanham Act.  That provision establishes a cause of action against:

(1)  Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A)  is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his

5

or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities.

15 U.S.C. § 1125(a)(1).

Section 43(a)(1) thus creates "two distinct bases" of liability: false association, *see id.* § 1125(a)(1)(A), and false advertising, *see id.* § 1125(a)(1)(B). *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014); *see also Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*, 743 F. App'x 457, 463 (D.C. Cir. 2018). Here, Plaintiffs sue Barcode under both theories, asserting claims for false association under Section 43(a)(1)(A), Dkt. 34 at 14–15 (Am. Compl. ¶¶ 91–99) and false advertising under Section 43(a)(1)(B), *id.* at 13–14 (Am. Compl. ¶¶ 81–90). Both theories, however, ordinarily require the plaintiff to establish both (1) "economic or reputational injury flowing directly from the deception wrought by the defendant's advertising" and (2) that "deception of consumers cause[d] them to withhold trade from the plaintiff." *See Lexmark*, 572 U.S. at 133 (applying these requirements to a false advertising claim under Section 43(a)(1)(B)); *Abrahams v. Simplify Compliance, LLC*, No. 19-cv-3009, 2021 WL 1197732, at *4 (D.D.C. Mar. 30, 2021) (citing *Paleteria La Michoacana*, 743 F. App'x at 463) (extending these requirements to false association claims under Section 43(a)(1)(A)).

In addressing Plaintiffs' motion for default judgment against Barcode, the Court reviewed Plaintiffs' original complaint and concluded that it failed to allege facts sufficient to clear either of these hurdles. Dkt. 25 at 10–13. In their original complaint, Plaintiffs asserted two injuries— first, that Barcode did not pay Plaintiffs for the use of their images, Dkt. 1 at 11 (Compl. ¶ 56), and, second, that Plaintiffs' careers were substantially injured by being associated with

6

Barcode's business, *id.* at 13 (Compl. ¶ 65).  The Court rejected the first theory because the Lanham Act is not aimed at remediating a loss of compensation.  Dkt. 25 at 12; *see Abrahams*, 2021 WL 1197732, at *5.  And the Court rejected the second theory because Plaintiffs had not plausibly alleged facts suggesting that any reputational damage that the models might have incurred due to the association with Barcode caused any third-party consumers (here, advertisers interested in licensing images of the Plaintiffs) to withhold trade from Plaintiffs—either incidentally due to confusion or intentionally due to a negative reputation—or otherwise deterred any third-party consumer from conducting business with Plaintiffs.  Dkt. 25 at 12–13.  Thus, "even accepting Plaintiffs' well-pleaded allegations as conceded," the Court concluded that they had failed to state a claim under the Lanham Act.  *Id.* at 13.

The allegations concerning Barcode's conduct contained in the amended complaint, *see generally* Dkt. 34 (Am. Compl.), are materially identical to those in the original complaint, *see* Dkt. 1 (Compl.).  The principal difference is just that Plaintiffs have now added the claim of contributory infringement against CESC.  Dkt. 34 at 15–16 (Am. Compl. ¶¶ 100–07).  Because the factual allegations, *see id.* at 4–12 (Am. Compl. ¶¶ 20–75), and claim of primary liability under the Lanham Act, *see id.* at 12–15 (Am. Compl. ¶¶ 66–99); *id.* at 16–19 (Am. Compl. ¶¶ 108–33), in the amended complaint are indistinguishable from those in the original complaint, the Court sees no reason to revisit or to revise its prior conclusion.  Notably, Plaintiffs identified no error in the Court's prior decision in their opposition to the motion to dismiss and have made no effort to raise allegations regarding the defect in the original complaint.  *See generally* Dkt. 39.

Because Plaintiffs have not properly alleged a direct violation of the Lanham Act, their allegation of a contributory violation of the Lanham Act necessarily fails as well.

**B.**    **Contributory Liability**

Even if the Court were to look past Plaintiffs' failure plausibly to allege Barcode's direct violation of the Lanham Act, their claim for contributory infringement would still fail as a matter of law.

Although the Lanham Act does not explicitly provide for secondary or contributory liability for either trademark infringement or other deceptive advertising practices prohibited by the statute, courts have recognized various theories of secondary liability. The "inducement rule"—which premises liability on purposeful, culpable expression and conduct—was first introduced in the Patent Act, 35 U.S.C. § 271(b), and later applied by the Supreme Court to copyright infringement, *see Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 435 (1984) (finding that the lack of "express language" creating contributory liability under the Copyright Act did not "preclude the imposition of liability . . . on certain parties who have not themselves engaged in the infringing activity"); *see also Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 763 (2011) (endorsing the use of contributory patent infringement law as guidance for a standard for contributory copyright infringement). The Supreme Court has adopted a similar standard for secondary trademark infringement under Section 32 of the Lanham Act, codified at 15 U.S.C. § 1114, extending liability for infringement "beyond those who actually mislabel goods with the mark of another" to include a manufacturer or distributor who "intentionally induces another to infringe a trademark" or who "continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement." *Inwood Labs. v. Ives Labs.*, 456 U.S. 844, 853–54 (1982).

Although the Supreme Court has not addressed contributory liability under Section 43, "[t]he Eleventh Circuit has held that contributory liability claims are available under the statute," and "the Second Circuit has recognized the possibility" as well. *Roadget Bus. PTE. v. PDD*

8

*Holdings Inc.*, No. 24-cv-2402, 2026 WL 44864, at \*20 (D.D.C. Jan. 7, 2026) (first citing *Duty Free Ams.*, 797 F.3d at 1276–77; and then citing *Societe Des Hotels Meridien v. LaSalle Hotel Operation P'ship*, 380 F.3d 126, 132–33 (2d Cir. 2004)).  At least two decisions from this court have also recognized claims for contributory false advertising, *see id.*; *see also Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*, 672 F. Supp. 2d 106, 113 (D.D.C. 2009), and for present purposes the Court assumes that such a claim is cognizable, *see also Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1432–33 (3d Cir. 1994) (emphasizing that general tort liability concepts, including agency law, are appropriate analyses and advance the purpose of the Lanham Act); *Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1151 (7th Cir. 1992) (implying that a party can "bear contributory liability under substantive provisions" of the statute, citing Sections 32 and 43 of the Lanham Act).

Assuming it applies to Section 43(a), contributory liability is triggered if a party (1) intentionally induces another party to violate Section 43(a), or (2) continues to supply its products to someone who that party knows or has reason to know may be engaging in a violation.  *See Guantanamera Cigar*, 672 F. Supp. 2d at 113 (citing *Inwood Labs.*, 456 U.S. at 853–54); *Roadget Bus. PTE.*, 2026 WL 44864, at \*20 (same).  Here, Plaintiffs' barebones amended complaint fails to plead facts sufficient to satisfy either prong of the test.  Because Plaintiffs do not even suggest that CESC induced—that is, persuaded or caused—Barcode to create the promotions at issue, much less to use Plaintiffs' images in those promotions, the only question for present purposes is whether the allegations in their amended complaint satisfy the second prong of the test.

Absent active inducement, a finding of liability under Section 43(a) requires that the defendant knows or has reason to know of the third party's Lanham Act violation.  *See Hard*

9

*Rock Cafe*, 955 F.2d at 1149; *Guantanamera Cigar*, 672 F. Supp. 2d at 113; *Newborn*, 391 F. Supp. 2d at 186; *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 505 (6th Cir. 2013).  This requires more than "a general knowledge or reason to know that its service is being used" to violate the law.  *Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93, 107 (2d Cir. 2010).  Instead, the defendant must have "some contemporary knowledge" of specific infringements.  *Id.*

Plaintiffs have not plausibly alleged that CESC had any specific knowledge of the alleged trademark violations.  Rather, as CESC notes, *see* Dkt. 36-1 at 10–11, Plaintiffs merely offer conclusory allegations that "[u]pon information and belief, CESC knew, had reason to know and/or was willfully blind in not knowing that Barcode had violated Plaintiffs' trademark rights."  Dkt. 34 at 16 (Am. Compl. ¶ 103); *see also id.* (Am. Compl. ¶ 107) (same).  This, like the only other allegation in the amended complaint relating to CESC's alleged contributory infringement—"CESC knowingly facilitated the infringement of each Plaintiff's trademark," *id.* (Am. Compl. ¶ 105)—is a bare conclusory assertion styled as a factual allegation, which the Court need not (and does not) credit.  *Laughlin*, 923 F. Supp. 2d at 209.

Plaintiffs offer no other factual allegations suggesting that CESC had any reason to discover Barcode's violation.  Nor is this a case in which the alleged infringement would be so obvious from the face of the advertisements:  CESC could not intuit that Barcode's advertisements contained unlicensed or unlawful depictions of professional models, and Plaintiffs do not allege that CESC was privy to any of Barcode's business transactions or licensing agreements.  More fundamentally, Plaintiffs do not allege that CESC ever encountered any of Barcode's infringing digital advertisements at all.  Even assuming that CESC, as a landlord, had some responsibility to maintain awareness of Barcode's physical advertising on CESC's property—and that assumption is highly doubtful—Plaintiffs allege only that the

10

unlawful use of images occurred online on Barcode's social media pages and website.  *See, e.g.*, Dkt. 34 at 5–11 (Am. Compl. ¶¶ 28, 31, 34, 37, 40, 43, 46, 49, 63).  By failing to allege facts that plausibly demonstrate that CESC knew or should have known of Barcode's direct infringement, Plaintiffs fail to state a claim for secondary liability under the Lanham Act.

Plaintiffs also argue that CESC can be held accountable for Barcode's alleged violation of the Lanham Act because it was Barcode's landlord.  Landlord-lessee contributory liability under Section 43(a) has developed in some jurisdictions to allow for liability where the landlord has significant influence and control over the facilities where the alleged infringement occurs. *See Hard Rock Cafe*, 955 F.2d at 1149 (applying *Inwood Laboratories*' contributory liability test to landlord-lessee relationships).  But to avoid strict liability for landlords whose tenants are violating intellectual property law, the landlord's influence and control must be paired with knowledge, awareness, or willful blindness.  *See Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996) ("[P]roviding the site and facilities for *known* infringing activity is sufficient to establish contributory liability." (emphasis added) (citing *Columbia Pictures Indus. v. Aveco, Inc.*, 800 F.2d 59 (3d Cir. 1986))); *id.* at 265 (endorsing *Hard Rock Cafe*).  Here, the only "control" that CESC might have had over Barcode's affairs, which might be gleaned from the amended complaint, arose from its ownership of the property where Barcode was operating. That control, however, is unlike the flea market at issue in *Fonovisa*, because Plaintiffs have not alleged facts sufficient to support a reasonable inference that CESC's control over its property as a landlord provided it with knowledge of Barcode's illicit conduct.  Thus, because Plaintiffs cannot plausibly allege that CESC knew or should have known of Barcode's direct trademark infringement, Plaintiffs must also fall short of properly alleging the influence and control necessary to impute contributory liability.

But even if Plaintiffs could also overcome that hurdle, they still have not plausibly alleged that CESC exercised sufficient (or any) influence or control over Barcode's allegedly infringing activities. *See Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 984 (9th Cir. 1999) (finding that when evaluating a contributory infringement claim not involving a "product," it is appropriate to measure the extent of defendant's control over the third party's means of infringement). As CESC emphasizes, *see* Dkt. 36-1 at 11–12, Plaintiffs exclusively allege trademark violations on Barcode's website and social media, rather than through the use of CESC's leased real property. Even if CESC (arguably) controls the physical facilities that Barcode used as a nightclub location, Plaintiffs allege no facts suggesting that it had any control whatsoever over Barcode's digital footprint. Plaintiffs offer no explanation of how CESC, in its role as a commercial landlord, could possibly facilitate or control any unlawful activity taking place online.[3] Accordingly, even the most expansive conceivable theory of contributory liability under the Lanham Act could not support Plaintiffs' theory in this case.

---

[3] The Court's conclusion also accords with recent Supreme Court precedent suggesting that, in at least some cases, contributory liability for intellectual property violations has a further intent element and requires that the accused party either induce the infringement by actively encouraging infringement through specific acts or tailor their service to infringement by providing a service that is incapable of substantial or commercially significant noninfringing uses. *Cox Commc'ns, Inc. v. Sony Music Ent.*, 146 S. Ct. 959, 967 (2026). Although the Court need not decide whether Plaintiffs' trademark claim must also satisfy this (copyright infringement) standard, it bears emphasis that Plaintiffs have not come close to alleging that CESC—which, like the internet service provider at issue in *Cox Communications*, is a general provider of commercial services—actively encouraged infringement through specific acts, or (nonsensically) somehow leased a real property that could only be used for digital violations of the Lanham Act. *See id.* at 964 (referring generally to the standard for contributory liability for a "provider of a service").

**CONCLUSION**

For the foregoing reasons, Defendant CESC's motion to dismiss, Dkt. 36, is hereby

**GRANTED**.

       **SO ORDERED**.


                        /s/ Randolph D. Moss
                        RANDOLPH D. MOSS
                        United States District Judge


Date:  July 22, 2026