**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| EVA PEPAJ, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>BARCODE CORPORATION,<br><br>*Defendant*. | Civil Action No. 22-1397 (RDM) |

**MEMORANDUM OPINION**

Plaintiffs are eight professional models who reside throughout the United States. Dkt. 1 at 2 (Compl. ¶ 5). They allege that Defendant Barcode Corporation ("Barcode") misappropriated images from their social media pages in advertising its night club in Washington, D.C. *Id.* at 4–5 (Compl. ¶¶ 20–24). Plaintiffs brought claims against Barcode for violations of the common law right of publicity and Section 43(a) of the Trademark Act of 1946 ("Lanham Act"), 15 U.S.C. § 1125(a), as well as various other common law torts. *Id.* at 14–20 (Compl. ¶¶ 66–125). Plaintiffs sought compensatory and punitive damages, an order permanently enjoining Barcode from using their images to promote its club, and attorney's fees and costs. *Id.* at 21 (Prayer for Relief).

Despite being properly served with a copy of the summons and complaint, *see* Dkt. 6 at 1; Dkt. 13 at 1, Barcode did not appear in this case. Following Plaintiffs' Motion for Entry of Default, Dkt. 17, the Clerk entered default on October 4, 2023, Dkt. 19. Plaintiffs subsequently filed a Motion for Default Judgment, Dkt. 21, to which they attached a declaration from Stephen Chamberlin, a talent agent who represents models in business negotiations, describing the market

value of their images for purposes of calculating damages, Dkt. 21-1. Plaintiffs sought a total of $605,000 in compensatory damages. Dkt. 21 at 5.

The Court granted Plaintiffs' motion in part and denied it in part without prejudice. Dkt. 25. The Court concluded that Plaintiffs' allegations, accepted as true, were sufficient to establish Barcode's liability as to Plaintiffs' common law right-of-publicity claim and their unjust-enrichment claim. Dkt. 25 at 8. The Court dismissed Plaintiffs' remaining claims for failure to state a claim. *Id.* As for the relief requested, the Court concluded that Plaintiffs had failed to carry their burden of demonstrating that a permanent injunction was warranted, *id.* at 22, and that they had failed adequately to support their request for $605,000 in compensatory damages with evidence supporting Chamberlin's calculations of the fair market value of Barcode's use of Plaintiffs' images, *id.* at 22–26. The Court accordingly denied Plaintiffs' motion "as it currently stands" but permitted Plaintiffs to renew their motion with "evidence of how and to what extent they were actually damaged," as well as "a more plausible—or better supported—methodology for calculating damages." *Id.* at 26. As for Plaintiffs' request for attorney's fees and costs, the Court found no basis to award attorney's fees on Plaintiffs' successful common law claims and noted that, although, Plaintiffs are entitled to costs under Federal Rule of Civil Procedure 54(d)(1), they had requested "a reasonable time following entry of the Court's judgment to apprise the Court of those costs." *Id.* at 27 (quoting Dkt. 21 at 6). The Court explained that, pursuant to Local Rule 54.1, Plaintiffs would have 21 days after the entry of judgment terminating the case to file a bill of costs. *Id.* (citing D.D.C. L.Cv.R. 54.1(a)).

Plaintiffs filed a renewed motion for default judgment, Dkt. 28, to which they attached a revised valuation report by Stephen Chamberlin, Dkt. 28-1. Plaintiffs also filed supplemental documentary evidence supporting their typical "day rates," *i.e.*, each model's base rate of

compensation for their time on the day of a shoot, as described in Chamberlin's report. Dkt. 31. On October 23, 2026, the Court held an evidentiary hearing on the issue of damages, at which Mr. Chamberlin explained his methodology and calculations. *See* Min. Entry (Oct. 23, 2026).

Chamberlin's second report continued to calculate a total amount of $605,000 in damages for all eight Plaintiffs. Dkt. 28-1 at 5. As the report explains, Chamberlin determined this value by first calculating for each Plaintiff a day rate based on various factors including the model's day rates from past modeling jobs. *Id.* at 14–15. Chamberlin then multiplied this day rate for each model by Barcode's number of "uses" of the image in question. *Id.* at 16. Chamberlin's report explains that standard industry practice is to charge a day rate for each category of "use," such as advertising and social media distribution, rather than for each specific instance in which the image was posted or distributed. *Id.* For each model's image or images, Chamberlin also multiplied the day rate for each category of use by the number of years in which the image was used. *Id.* at 5–6, 21. According to Chamberlin, an image previously posted on social media is "used" each year that the business does not take action to remove the prior post, even if the business also takes no action affirmatively to repost or to promote the image in those subsequent years and even if there is no evidence that the image was actually viewed by any potential customers. *See* Oct. 23, 2026 Hearing Tr. (Rough at 4–5, 19).

The Court concludes that Plaintiffs have provided sufficient evidence and explanation to support Chamberlin's calculation of each model's day rate and to support an award of damages for each category of "use" of their images, such as advertising for Barcode and use on Barcode's social media platforms. But the Court is unpersuaded that Plaintiffs have shown that Barcode continued to "use" each of these images continuously for six or seven years simply because Barcode did not affirmatively remove the images from its social media pages. As the Court

pointed out in its previous opinion, *see* Dkt. 25 at 24–25, many of the images in question advertised time-limited events that occurred on specific dates. *See, e.g.*, Dkt. 1-3 at 4 (advertising a St. Patrick's Day event on "Saturday, March 19th"); Dkt. 1-4 at 2 (advertising a "day before Thanksgiving" event on Wednesday, November 21). Plaintiffs have provided no evidence that any of these images remained in a prominent position on Barcode's online platforms, such as if the images were "pinned" to the top of Barcode's social media feed or used as a profile picture displayed to everyone who interacted with Barcode on the platform. Plaintiffs have also provided no evidence that Barcode continued to direct anyone to these years-old posts or that anyone saw these posts advertising past events in the six or seven years between when they were posted and when Plaintiffs filed their complaint. *See* Oct. 23, 2026 Hearing Tr. (Rough at 4–6) (Mr. Chamberlin acknowledging that he did not do anything to determine how deep into Barcode's social media feed Plaintiffs' images appeared or whether anyone continued to view them).

Nor is the Court persuaded by Chamberlin's suggestions that industry practice in negotiating "rollover fees" for images used for multiple years warrants multiplying Plaintiffs' damages for each year in which Barcode did not remove its long-outdated posts. As Chamberlin acknowledged, he includes this multiplier only when requested by plaintiffs' attorneys. *See id.* (Rough at 4). But, even more to the point, Plaintiffs have offered no evidence that images never removed from social media feeds about events that occurred long ago and that are neither reposted nor otherwise highlighted have an ongoing and unmitigated market value until affirmatively removed, no matter how many years have passed and no matter how deeply buried in the social media feed. Even though modeling contracts typically include time limits and require renewal when the advertiser seeks to continue using or to reuse the images that they have

acquired, that does not mean that outdated and neglected images of this type have perpetual market value, let alone that such market value is equal to the value of the image at the time it was first posted. Plaintiffs' justification for multiplying their requested damages by each year the outdated images were left online assumes that market value hinges exclusively on what a modeling agency would demand in a contract or renewal. *See* Dkt. 28-1 at 5 ("Depending on the date first used and the subsequent date that the image was removed a rollover fee would be charged for each year of use."). But that is only half the story. As Chamberlin recognizes elsewhere in his report, market value also turns on what someone would pay for the image. *See id.* at 21 ("Fair market value of a product or service is the agreed price between a knowing, voluntary, and willing seller and a knowing, voluntary, and willing buyer, with no interference, disruption, or manipulation by a third party."); *see also United States v. Miller*, 317 U.S. 369, 374 (1943) ("It is usually said that market value is what a willing buyer would pay in cash to a willing seller."). Plaintiffs have not provided any evidence that a business like Barcode would, in a hypothetical negotiation, agree to continue paying each model's full day rate each year that Barcode did not remove outdated posts advertising events from years earlier. Plaintiffs have, accordingly, failed to proffer sufficient evidence for the Court to conclude that they are entitled to recover the substantial damages that they seek for the years in which Barcode simply left untouched the images it had previously posted to its social media feeds.

Some of Plaintiffs' images do, however, appear to have been reposted by Barcode to its social media pages to advertise a repeat event multiple years in a row or to advertise different events occurring in different years. *See, e.g.*, Dkt. 28-1 at 27–28 (screenshots of posts on Barcode's Facebook page on March 14, 2015, and March 14, 2016, each with the same image of Plaintiff Eva Pepaj); Dkt. 28-1 at 70 (screenshots of Barcode's use of Plaintiff Linda Posada's

image to advertise multiple events on different dates). With respect to the images that Barcode affirmatively reposted to advertise events occurring in multiple years, the Court concludes that Plaintiffs have adequately established multiple years of use for purposes of determining compensatory damages. The Court will, accordingly, award those Plaintiffs their day rates for each year in which their evidence establishes that Barcode affirmatively reused their images in its advertising.

For the foregoing reasons, the Court will **ENTER** judgment in favor of the Plaintiffs and against Defendant Barcode Corporation in the total amount of $165,000 in compensatory damages, plus post-judgment interest as provided in 28 U.S.C. § 1961, as set forth in the accompanying order that will issue separately.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: October 27, 2026